UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                          2:12-cr-71-FtM-29SPC

KIMBERLY MOORE

_____

### OPINION AND ORDER

This matter came before the Court on January 14, 2013, for sentencing.  The Court heard argument of counsel and then (1) sustained defendant's objection to not receiving a downward adjustment for acceptance of responsibility (Presentence Investigation Report (PSR), ¶ 58); (2) overruled defendant's objection to receiving an upward adjustment for role in the offense (PSR, ¶ 54); and (3) took under advisement defendant's objection to consideration of relevant conduct in the calculation of the Base Offense Level (PSR, ¶¶ 50, 51).  The Court continued the sentencing hearing to allow the parties to file written memoranda on the relevant conduct issue.  Both the United States (Doc. #38) and defendant (Doc. #41) have now filed written memoranda setting forth their arguments concerning relevant conduct and the calculation of defendant's base offense level in this case.

**I.**

Some history is needed.  In the first drug prosecution of Kimberly Ann Moore (Moore), Case No. 2:10-cr-92-JES-SPC (the first case), a Superceding Indictment charged Moore and Terrance Jovan

Taylor with conspiracy to possess with intent to distribute and distribution of Oxycodone in March/April 2010. Moore was also charged with possession with intent to distribute and distribution of Oxycodone on March 16, 2010 and April 30, 2010, for sales she made on those dates. On July 15, 2010, Moore was released on bond. In due course, Moore entered into a Plea Agreement, and on May 16, 2011 pled guilty to the conspiracy count. On August 16, 2011, Moore was sentenced to four years probation, a sentence substantially below that recommended by the Sentencing Guidelines (37-46 months).

The government now proffers that unknown to Drug Enforcement Administration (DEA) agents or the Court, Moore made three additional sales of Oxycodone while she was on pretrial release in the first case. These sales were in January and February 2011, and involved a total of 2,050 30 mg Oxycodone pills. (PSR, ¶¶ 8-11.) The government proffers that in January 2011, Anthony Rando was introduced to defendant Moore as an Oxycodone source of supply. Rando subsequently purchased Oxycodone pills from Moore on three occasions in January and February of 2011: The first involved between 50-100 30 mg Oxycodone pills; approximately one week later he purchased 1,000 30 mg Oxycodone pills from Moore for $9,000 cash; and approximately 2-3 weeks later he purchased 1,000 30 mg Oxycodone pills from Moore for $9,000 cash.

In March 2012, a confidential source first gave the DEA the information about Moore's drug sales in January and February of 2011. In April 2012, DEA began another undercover investigation of defendant, which resulted in her current Indictment (Doc. #1) in the instant case. Moore was charged with, and pled guilty to, four offenses: Conspiracy to possess with intent to distribute Oxycodone with other persons known and unknown from in or about April 2012, to on or about May 21, 2012 (Count One); possession with intent to distribute and distribution of 3, 4 Methylenedioxymethamphetamine (MDMA) on or about April 26, 2012 (Count Two); possession with intent to distribute and distribution of 3, 4 Methylenedioxymethamphetamine on or about May 3, 2012 (Count Three); and possession with intent to distribute and distribution of 3, 4 Methylenedioxymethamphetamine on or about May 21, 2012 (Count Four). The government's factual basis established that defendant made sales of 89 units of 3, 4 Methylenedioxymethamphetamine to an undercover officer on the dates alleged. As to the conspiracy charge, Moore admitted conspiring with other individuals and attempting to get them on a group health insurance plan so that they could utilize the insurance in order to bring down the cost of obtaining prescription Oxycodone pills for illegal sale or use.

## II.

The Presentence Report has calculated the Base Offense Level by adding the 89 units of MDMA involved in the counts of the current Indictment with the 2,050 Oxycodone 30 mg pills (61.5 grams) involved in the previously unknown sales while Moore was on pretrial release in the first case. (PSR, ¶ 50.) After converting to marijuana equivalency, as required by the Sentencing Guidelines, the 89 units of MDMA are equal to 11.125 kilograms of marijuana, and the 61.5 grams of Oxycodone are equal to 412.05 kilograms of marijuana. Because the offense involved at least 400 kilograms of marijuana, the Base Offense Level was computed at a level 28. (PSR, ¶ 51.) If the Oxycodone is not counted, the Base Offense Level would be computed at a level 16. U.S.S.G. § 2D1.1(c)(12).

## III.

Defendant argues that the Oxycodone should not be included in the calculation of the Base Offense Level in this case because it is not the charged offense and is not relevant conduct within the meaning of the Sentencing Guidelines. The Court agrees.

Under the Sentencing Guidelines, a district court arrives at the appropriate offense level through a two-step process. United States v. Belfast, 611 F.3d 783, 824 (11th Cir. 2010). First, the district court must determine which offense guideline section covers the offense of conviction. U.S.S.G. §§ 1B1.1(a), 1B1.2(a); United States v. Saavedra, 148 F.3d 1311, 1314 (11th Cir. 1998).

-4-

The "offense of conviction" is "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." U.S.S.G. § 1B1.2(a); Saavedra, 148 F.3d at 1314. Selection of the applicable guideline section in Chapter Two is based only upon the offense of conviction, without consideration of defendant's relevant conduct. Saavedra, 148 F.3d at 1316-17; United States v. Jennings, 991 F.2d 725, 732 (11th Cir. 1993). Here, the "offense[s] of conviction" are the conspiracy to possess with intent to distribute Oxycodone with other persons known and unknown from in or about April 2012 to on or about May 21, 2012, plus the three substantive counts of possession with intent to distribute and distribution of 3, 4 Methylenedioxymethamphetamine on or about April 26, 2012, May 3, 2012, and May 21, 2012. The applicable guideline section is therefore U.S.S.G § 2D1.1. Saavedra, 148 F.3d at 1315-16; United States v. Reese, 67 F.3d 902, 905 (11th Cir. 1995).

Second, the district court must determine the appropriate Guidelines range under that selected section based on the defendant's actual conduct, which may include conduct that was not an element of the offense of conviction. Belfast, 611 F.3d at 824 (citing U.S.S.G. §§ 1B1.2(b), 1B1.3); Saavedra, 148 F.3d at 1314. Section 2D1.1 determines the Base Offense Level by using a table which takes into account the type and quantity of the controlled substance. U.S.S.G. § 2D1.1. Calculating the Base Offense Level

requires a determination of the quantity of the substance(s) which may be attributed to defendant for sentencing purposes, and this can include the quantity involved in relevant conduct if shown by a preponderance of the evidence.  U.S.S.G. § 1B1.2(b); <u>Belfast</u>, 611 F.3d 824; <u>Saavedra</u>, 148 F.3d at 1317.  In other words, "[u]nder the sentencing guidelines, 'the offense' for which a defendant can be sentenced includes 'the offense of conviction and all relevant conduct.'"  <u>United States v. Dunlap</u>, 279 F.3d 965, 966 (11th Cir. 2002)(citing U.S.S.G. § 1B1.1).  <u>See</u> <u>also</u> <u>Edwards v. United States</u>, 523 U.S. 511, 513 (1998).

As pertinent to this case, relevant conduct includes: (1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" by the defendant that occurred during the commission of the offense of conviction, U.S.S.G. § 1B1.3(a)(1)(A); (2) all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction, U.S.S.G. § 1B1.3(a)(1)(B); and (3) for offenses that require grouping (such as drug offenses), all acts and omissions by defendant or reasonably foreseeable act by others that were part of the same course of conduct or common scheme or plan as the offense of conviction, U.S.S.G. § 1B1.3(a)(2). Relevant conduct may include quantities of drugs for which there was no conviction, or for which there was even an acquittal.

United States v. Watts, 519 U.S. 148 (1997); United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006).

As noted above, the "offense[s] of conviction" in this case are the conspiracy to possess with intent to distribute Oxycodone with other persons known and unknown from in or about April 2012 to on or about May 21, 2012, plus the three substantive counts of possession with intent to distribute and distribution of 3, 4 Methylenedioxymethamphetamine on or about April 26, 2012, May 3, 2012, and May 21, 2012. The only quantities of drugs applicable to the offense of conviction, either by defendant or other conspirators, is the 89 units of MDMA. If the prior sales of Oxycodone are to be considered as relevant conduct, they must qualify as acts by defendant that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

"For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n. 9(A). If this criteria is not met, the prior drug sales may nevertheless be counted as relevant conduct if they were part of the same course of conduct. "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or

related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n. 9(B).  Factors to be considered include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.  When one of the above factors is absent, a stronger presence of at least one of the other factors is required."  Id.

The prior drug sales do not constitute part of a common scheme or plan, and do not constitute part of the same course of conduct. This case does not reflect a single, on-going drug distribution scheme.  The conspiracy charged in the current indictment is not alleged to have been in effect during the prior sales, and those sales were not made pursuant to a scheme involving defendant's company's insurance plan.  In United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994), the court concluded that a prior cocaine distribution scheme lacked sufficient distinctive similarities to a dilaudid distribution conviction because each involved different parties and drugs.  The mere fact that each scheme involved the distribution of drugs was insufficient to "signal that they [were] part of a single course of conduct" as opposed to "isolated, unrelated events that happen only to be similar in kind."  Id. (quotation marks and citation omitted).  In this case, different people were involved, and there is no indication that they knew each other or knew of each other's

existence.    Assuming   the   government   proves   the   facts   it   has proffered, the Court finds that the prior Oxycodone sales while on pretrial release would not be relevant conduct of this case.

This is not to say that the prior sales while on pretrial release may not be considered by the Court.  Such conduct may not be included in the calculation of relevant conduct, but may be considered by the Court in the determination of the appropriate sentence, including a variance.  Accordingly, the government should be prepared to establish the proffered facts at the sentencing hearing if it wants the Court to consider such conduct.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Fort Myers, Florida, this <u>14th</u> day of February, 2013.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record